IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**WOODROW JACKSON,**

**Plaintiff,**

v.

**AUTO-OWNERS INSURANCE COMPANY,**

**Defendant.**

**CASE NO: 7:24-cv-136–WLS**

## ORDER

The Court held a show cause hearing on June 3, 2025, with respect to why Plaintiff's counsel, Brian Braddy, should not be sanctioned for citing non-existent or "hallucinated" cases to the Court and Defendant's counsel in Plaintiff's Response to Brief in Support of Denying Defendant's Motion to Dismiss (Doc. 9) ("MTD Response") filed April 7, 2025.

## I. BACKGROUND

Plaintiff's state court action for breach of contract against Defendant Auto-Owners Insurance Company ("Auto-Owners") was removed to this Court on December 19, 2024. (*See* Doc. 1). On March 21, 2025, Auto-Owners refiled in this Court the motion to dismiss (Doc. 7) it had previously filed in the state court proceeding. In Plaintiff's MTD Response, Mr. Braddy cited nine cases. In Auto-Owners' Reply (Doc. 10), its counsel pointed out that they could not locate any of the cases/opinions cited in the MTD Response. (*Id.* at 2). The Court conducted its own thorough search for the cases and was also unable to locate any of the nine cases cited in the MTD Response. Therefore, by Order (Doc. 13) ("Show Cause Order") entered May 9, 2025, the Court ordered Plaintiff's counsel to (1) provide true and accurate copies of all cases cited in Plaintiff's MTD Response, or (2) show cause in writing why he should not be sanctioned pursuant to Fed. R. Civ. P. 11(b), (c); 28 U.S.C. § 1927;[1] and/or the inherent power of the Court for citing non-existent cases to the Court. The written explanation

[1] 28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

was ordered to be in the "form of a *sworn declaration providing a thorough explanation of how the [MTD] Response and nonexistent cases were generated*." (Doc. 13 at 3 (emphasis added)). The Court cautioned that it would not hesitate to impose Rule 11 sanctions against a party who abused the adversary process or otherwise attempted to deceive the Court by relying on nonexistent case law.

Plaintiff's Response to Order to Show Cause and Motion to Substitute Correct Legal Authorities (Doc. 14) ("Show Cause Response") was timely filed. However, rather than following the specific instructions set forth in the Show Cause Order, Mr. Braddy stated only that the incorrect version of the MTD Response was inadvertently filed and that such version "does not reflect the authorities upon which Plaintiff now relies." (Doc. 14 at 1). Plaintiff requested leave of Court to file a corrected version of the MTD Response.[2]

The Court found the Show Cause Response was deficient because it (1) was not in the form of a sworn declaration, and (2) did not provide a thorough explanation of how the MTD Response was generated as required by the Show Cause Order. (*See* Order Doc. 15 ("Hearing Order")). The Court also noted that Mr. Braddy was made aware of the problem with the case citations by Auto-Owners' counsel in the Reply filed on April 7, 2025. Yet Mr. Braddy did not attempt to correct or address the incorrect citations until a month later when he was ordered to do so by the Court's Show Cause Order. The Court questioned whether the delay belied the inference in the Show Cause Response that Mr. Braddy had prepared and intended to file a different version of the MTD Response. As such, the Court set a hearing on the issue for June 3, 2025 ("Show Cause Hearing"). (*Id.*)

## II. SHOW CAUSE HEARING

Shortly before the June 3, 2025 Show Cause Hearing, on May 29, 2025, Mr. Braddy filed a Sworn Declaration (Doc. 16) ("Declaration") in which he more thoroughly complied with the Court's Show Cause Order.[3] For the first time, Mr. Braddy explained that the MTD

[2] By separate Order (Doc. 18) entered after the June 3, 2025 hearing, the Court permitted Plaintiff to refile his MTD Response with appropriate case citations. On June 4, 2025, Plaintiff filed the corrected response (Doc. 19).

[3] The Declaration provides a full explanation of what happened, and therein, Mr. Braddy takes accountability for the errors contained in the MTD Response. This was the response to the Show Cause Order that the Court

Response was generated using an artificial intelligence ("AI") software. He further explained that the MTD Response was never intended to be filed, but was supposed to be used only as a framework for Plaintiff's response to the motion to dismiss. Mr. Braddy acknowledged that he is fully responsible for documents filed in his cases, and he took full responsibility for the wrong document being filed in this case. (*Id.* at 1–2). As an indication that the MTD Response was not the document he intended to file, Mr. Braddy noted that the signature block in the MTD Response incorrectly included the signatures of Defendant's counsel. The Braddy Declaration is consistent with Mr. Braddy's statements to the Court during the Show Cause Hearing.

In addition to reiterating the information in the Declaration at the hearing, Mr. Braddy personally apologized to the Court and Auto-Owners' counsel for the additional time and work caused by filing the MTD Response with the hallucinated citations. As an explanation, but not an excuse, Mr. Braddy stated that his office had experienced multiple staff transitions and that he was currently the only attorney in the Georgia office. He further indicated that the MTD Response had been generated within the office. Again, acknowledging that he is fully responsible for documents filed under his name and in response to the Court's inquiry as to how the MTD Response was inadvertently filed, Mr. Braddy indicated that a staff member had made the incorrect filing. To ensure the error does not occur again, Mr. Braddy stated that his office has taken steps to double check and cross reference sources cited in every motion and response to be filed with the Court. While Mr. Braddy believed he had discussed the incorrect signature block and the hallucinated citations with Auto-Owners' counsel and that a corrected MTD Response had been filed, he did not realize that the corrected version had not been filed until he received the Court's Show Cause Order.

Auto-Owners' counsel advised the Court that in their interactions with Mr. Braddy he had always been professional and courteous. While Auto-Owners' counsel stated they had discussed the incorrect signature block with Mr. Braddy, they advised the Court that they had not discussed the hallucinated citations with him and were unaware of the problems with the citations until they reviewed the MTD Response in preparing to file a reply if necessary.

---

was expecting from Mr. Braddy. In fact, had Mr. Braddy initially filed the Declaration which fully complied with the Show Cause Order, it is unlikely the Court would have found that a hearing was necessary.

According to Auto-Owner's counsel, Mr. Braddy's error resulted in their client incurring attorney fees in addressing the inaccuracies and expenses and time traveling to and attending the Show Cause Hearing. Insofar as whether and what kind of sanctions were appropriate, Auto-Owners' counsel deferred to the Court's discretion but requested that Auto-Owners be reimbursed for the attorney fees and expenses incurred by their client that were associated with the error.

As to sanctions, Mr. Braddy states he has taken steps to address the error and expects the Court will not need to address this issue with him again. He suggested that a stern warning and continuing education requirements were appropriate.

## III. LAW AND ANALYSIS

In sum, this is a case where it is clearly established and admitted that Mr. Braddy utilized AI to prepare the MTD Response which contained multiple hallucinated case citations. Although Mr. Braddy indicates that the document was not intended to be filed, it is unclear whether the case citations were ever checked by Mr. Braddy, and a staff member filed the MTD Response with this Court over Mr. Braddy's signature. Mr. Braddy acknowledges, as he must, that he is ultimately responsible for all documents filed in this Court over his signature.

In its Show Cause Order, the Court cited three potential grounds on which sanctions could be imposed for the hallucinated citations in the MTD Response: Federal Rule of Civil Procedure 11(b), (c); 28 U.S.C. § 1927; and/or the Court's inherent power. Significantly, however, imposing sanctions under § 1927 or under the Court's inherent power requires a finding of bad faith. *See e.g.*, *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) ("A sanctions motion under either a court's inherent powers or § 1927 requires a showing that the party acted in bad faith."). As discussed below, the Court finds that Mr. Braddy did not act in bad faith; and therefore, the Court considers only whether sanctions are warranted under Rule 11.[4]

[4] In doing so, the Court does not find that sanctions under 28 U.S.C. § 1927 or the Court's inherent power can never be imposed for including hallucinated case citations in documents filed in this Court, but only that bad faith is not present in this particular case.

**A. <u>Rule 11 Violation</u>**

Federal Rule of Civil Procedure 11(b) states, in relevant part, that, in presenting to the Court a written and signed pleading, motion, or other paper, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and also that "(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1)–(2). "A fake opinion is not 'existing law'" and "[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023).

Other courts have recognized, and this Court agrees, that there is no general prohibition against attorneys using AI to research and draft documents they intend to file on behalf of their clients. *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at *4 (S.D. Fla. May 20, 2025) ("there is nothing inherently wrong with an attorney properly and competently utilizing AI or any of its subsets to practice law or litigate cases"); *O'Brien v. Flick*, No. 24-61529-CIV, 2025 WL 242924, at *5 (S.D. Fla. Jan. 10, 2025) ("While there is no prohibition against the use of technology to aid in the preparation of court filings, there is a duty of candor to the Court[.]"), *appeal docketed*, No. 25-10143 (11th Cir. Jan. 15, 2025). However, the technology is evolving and there are many glitches as shown by the multiple cases considering whether sanctions should be imposed on attorneys and *pro se* litigants caught citing hallucinated cases in documents filed in the courts. *See Versant Funding*, 2025 WL 1440351 (citing cases and articles and discussing problems with AI and attorneys' duties and responsibilities when using AI).

> A basic prerequisite to the filing of any pleading, motion, response, reply, or paper in court is for the drafting and filing attorney(s) to carefully check every case citation, fact, and argument to make sure that they are correct and proper. Attorneys cannot delegate that role to AI, computers, robots, or any other form of technology. Just as a competent attorney would very carefully check the veracity and accuracy of all case citations in any pleading, motion, response, reply, or other paper prepared by a law clerk, intern, or other attorney before it is filed, the same holds true when attorneys utilize AI or any other form of technology.

*Versant Funding*, 2025 WL 1440351, at *4. The failure of any attorney to thoroughly review documents prepared using AI is as unacceptable as failing to review documents prepared by a paralegal or legal assistant—which is in effect allowing an unlicensed individual to practice law using an attorney's name and signature. And such conduct is sanctionable under Rule 11.

**B. Appropriate Sanctions**

After notice and a reasonable opportunity to respond, Federal Rule of Civil Procedure 11(c) permits courts, *sua sponte*, to impose sanctions, including monetary sanctions, on any attorney, law firm, or party that violates Rule 11(b)(1) or (2). *See* Fed. R. Civ. P. 11(c)(1)–(5). Pursuant to those provisions, the Court directed Mr. Braddy to explain what appeared to be fake citations in the MTD Response. As noted above, the Court required a *sworn* detailed explanation of how the response and fake citations were generated. Not only was Mr. Braddy's initial Show Cause Response unsworn, he utterly failed to even mention the fake citations stating only that the version of the response that was filed was never intended to be filed. Neither did Mr. Braddy in that response accept responsibility for such filing nor apologize for the extra work caused by his error. Mr. Braddy finally submitted his Declaration complying with the Court's Show Cause Order nine days after entry of the Hearing Order and four days prior to the June 3, 2025 Show Cause Hearing.

In making its decision on whether sanctions should be imposed, the Court accepts and considers Mr. Braddy's eventual explanation and apology provided in his Declaration and at the Show Cause Hearing. The Court further considers Mr. Braddy's use of the fictitious citations and his evasive initial response to the Court's direct order which resulted in the necessity of setting a hearing and the Court and Defendant's counsel expending unnecessary resources, time, and expense in this case. *Thomas v. Pangburn*, No. 4:23-CV-46, 2023 WL 9425765, at *5 (S.D. Ga. Oct. 6, 2023) (finding that plaintiff's lack of explanation when asked about fake citations in his filings "cast doubt on his intentions" and dismissing case partially as a sanction due to plaintiff's fake citations), *report & recommendation adopted*, 2024 WL 329947 (S.D. Ga. Jan. 29, 2024), *appeal dismissed*, No. 24-10368-C, 2024 WL 5389428 (11th Cir. Oct. 21, 2024). *See also O'Brien*, 2025 WL 242924, at *6 ("Courts that have addressed the practice consistently agree that the use of fake legal authority is problematic and warrants sanctions."); *Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir. 1988) (holding that citing nonexistent rules of

law was precisely the type of conduct that could be sanctioned under Rule 11 but remanding for reconsideration of substantial amount of sanctions).

Sanctions imposed under Rule 11 are "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1).

The Court finds that Plaintiff is not responsible for Mr. Braddy's failure to ensure that the MTD Response with the hallucinated case citations was not filed with the Court. Thus, dismissal is not appropriate in this case as that would impose unwarranted sanctions directly on Plaintiff. Further, the Court does not find that Mr. Braddy filed the MTD Response for any improper purpose. Rather it was filed recklessly and the legal contentions stated therein were not supported by existing law because the citations to nonexistent opinions were not "exiting law." Fed. R. Civ. P. 11(b); *Mata*, 678 F. Supp. 3d at 461. Although Mr. Braddy acted recklessly, the Court does not find that he acted in bad faith.

Other than dismissing cases, sanctions for citing hallucinated cases have varied from courts issuing warnings, *Gordon v. Wells Fargo Bank N.A. Inc.*, No. 5:24-CV-388, 2025 WL 1057211 (M.D. Ga. Apr. 8, 2025) (issuing warning of substantial penalty to *pro se* party if he continued to file documents citing fake cases), to imposing monetary sanctions, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d at 466 (finding attorneys' expression of remorse was sincere, they did not have a history of disciplinary action, there was a low likelihood that actions would be repeated, and hallucinated citations were not submitted out of animus, but finding appropriate sanction included imposing $5000 penalty jointly and severally on two attorneys and their firm); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 498 (D. Wyo. 2025) (noting drafting attorney's honesty and candor and imposing "mitigated" $3000 sanction for drafting document with fake citations and revoking pro hac vice admission; and imposing $1000 sanction on each of the other two attorneys for failing to review document); *Versant Funding*, 2025 WL 1440351 (imposing $1000 sanction on attorney who prepared response and $500 sanction on attorney who failed to review response). In addition to monetary sanctions, courts have required the offending attorney to (1) pay reasonable attorney fees and costs to opposing counsel; (2) attend CLE courses addressing the legal and ethical obligations of counsel using AI and to file

certifications with the court that they had met the CLE requirements; (3) send letters to their clients with copies of the sanctions order and transcript of hearing; and/or (4) report their conduct to the bar association and other judges in the district. *See Mata*, 678 F. Supp. 3d 443; *Wadsworth*, 348 F.R.D. 489; *Versant Funding*, 2025 WL 1440351.

## IV.   CONCLUSION

The Court has carefully considered the applicable rules, case law, Mr. Braddy's conduct, his Declaration, the comments and arguments of counsel at the Show Cause Hearing, and the entire Record. Having considered the totality of the circumstances and facts, the Court finds that sanctions should be imposed as follows:

1.   The Court **ORDERS** Mr. Braddy to pay a sanction in the amount of One Thousand ($1000) Dollars into the Registry of the Clerk of this Court. Mr. Braddy shall determine the logistics of the payment by contacting the Clerk of the Court. After payment, he shall file a notice with the Court stating the sanction has been paid.

2.   Within ninety (90) days from the date of this Order, Mr. Braddy shall attend and complete an approved CLE course on Artificial Intelligence which has a component addressing the ethical and legal obligations of counsel and parties regarding the use of Artificial Intelligence. Attendance can be in person or remote, if permitted. On or before **Friday, October 17, 2025**, Mr. Braddy shall file a notice stating whether and how he has completed the requisite CLE and complied with this Order.

3.   The Court will award Defendant all reasonable attorneys' fees and costs incurred by its counsel for the time spent in researching and replying to the MTD Response (Doc. 9) and the time and expense for Defendant's attorneys to attend the June 3, 2025 Show Cause Hearing. The parties' counsel shall promptly confer and attempt in good faith to determine and agree upon the reasonable attorneys' fees and costs that were incurred by Defendant's counsel in this regard as described. The parties shall then file a Joint Notice on or before **Monday, July 28, 2025**, stating whether they have been able to agree upon the fees and costs to be paid, and if so, the specific amount agreed upon, and the scheduled payment. The Court will then issue any further Order as deemed necessary. In the unlikely event the parties and their counsel cannot agree on a reasonable amount of fees and costs, or a scheduled

payment, they shall file separate notices and responses with supporting documentation where appropriate on or before **Monday, July 28, 2025**, stating the nature of the dispute over the fees and costs (whether it involves the time incurred, hourly rate, or other issues) and their respective positions. The Court will promptly determine the amount of the attorneys' fees and costs to be paid to Defendant by Mr. Braddy and issue any appropriate further orders.

4. Pursuant to Rule 11(c)(1), Mr. Braddy and his firm, Your Insurance Attorney PLLC, shall be jointly responsible for payment of the above $1000 sanction and Defendant's reasonable attorneys' fees and costs. In the event exceptional circumstances exist to establish that Your Insurance Attorney PLLC should not be held jointly responsible for payment of such sanction and attorneys' fees and costs, an appropriate motion may be filed on or before **Monday, July 28, 2025**, setting forth in detail such exceptional circumstances.

5. Mr. Braddy shall promptly provide a copy of this Order to his client, Woodrow Jackson.

6. Failure to fully and timely comply with this Order may result in further, more substantial sanctions.

7. Because Mr. Braddy and his firm, Your Insurance Attorney PLLC, are involved in similar litigation throughout the State of Georgia, the Clerk of the Court is **DIRECTED** to serve a copy of this Order on the Chief Judge of each United States District Court in Georgia.

**SO ORDERED**, this 11th day of July 2025.

**/s/W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**